THE PEOPLE v. CHARLES E. WHITNEY AND ELLIS ALDRICH.

*Liquor traffic—Local option—Unusual punishment—Information—*
*Complaint—Jurisdiction of justice—Evidence—*
*Credibility of witness.*

1. Upon the Legislature alone is conferred the power to fix the minimum and maximum of the punishment for all crimes; citing *People v. Smith*, 94 Mich. 644.

2. The local option law, so called (3 How. Stat. § 2283b5), which imposes as a penalty for its violation, for a first offense, a fine of not less than $50 nor more than $200 and the costs of prosecution, or imprisonment in the county jail not less than 20 days nor more than 6 months, in the discretion of the court, and, for a second and every subsequent offense, a fine of not less than $100 nor more than $500, and imprisonment in the State House of Correction and Reformatory at Ionia for a term of not less than 6 months nor more than 2 years, in the discretion of the court, is not in conflict with section 31, art. 6, of the Constitution, which provides that excessive fines shall not be imposed, nor cruel or unusual punishment inflicted.[1]

3. In a prosecution for a violation of the local option law, the complaint and warrant charged the offense to have been committed on, to wit, the 30th day of July, 1894, while in the information it was alleged to have been committed on, to wit, the 27th day of July, 1894. There was some evidence on

<hr>

[1] For cases arising under the local option law, see *Moran v. Darby*, 97 Mich. 186, and note; *Giddings v. Wells*, 99 Id. 221; *People v. Ingraham*, 100 Id. 580; *People v. Wade*, 101 Id. 89; *People v. Rice*, 103 Id. 350.

the examination showing the offense to have been committed on the last-named date. And it is held that the prosecution was not bound by the date charged in the complaint and warrant, but had the right to inform against the respondents for the offense committed on the date shown by the examination; citing *People v. Annis*, 13 Mich. 511.

4. A prosecuting attorney who makes a complaint for a violation of the local option law in his county before a justice of the peace who is his brother-in-law is not a party to the suit, within the meaning of How. Stat. § § 6822, 7245, which prohibit any judge or justice of the peace from hearing any case where he is related to either party in certain degrees by marriage or blood; citing *Parsons v. People*, 21 Mich. 509.

5. An information under the local option law which charges that the respondents, on, to wit, a day certain, at a specified village and county, did then and there unlawfully keep a saloon and place where vinous, malt, brewed, fermented, spirituous, and intoxicating liquors, and mixed liquors and beverages, a part of which was intoxicating, were sold, stored for sale, and furnished as a beverage, they not selling, storing for sale, or furnishing such liquors as a druggist or registered pharmacist under and in compliance with the restrictions and requirements imposed upon druggists and registered pharmacists by the general laws of the State of Michigan, and such liquors not being wine sold for sacramental purposes, nor pure alcohol sold or furnished by a druggist or registered pharmacist for medicinal, art, scientific, or mechanical purposes, but being sold, stored for sale, and furnished contrary to the provisions of a certain resolution adopted by the board of supervisors of said county (naming it) on, to wit, a day named, pursuant to Act No. 207, Laws of 1889, and that the aforesaid keeping a saloon and room where such liquors were sold, stored for sale, and furnished by respondents was in violation of the act cited (describing it), which was then in full force and effect in said county, contrary to the statute, etc., is not open to the objections:

    *a*—That it does not charge that vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or mixed liquors and beverages, a part of which was intoxicating, were either sold, stored for sale, or furnished as a beverage at the time the respondents are charged with keeping a saloon.

    *b*—That it is not charged that the respondents, or either of them, sold, stored for sale, or furnished any of the liquors mentioned in the act above cited.

c—That it is not charged that either of the respondents was not selling, storing for sale, or furnishing such liquors as a druggist or registered pharmacist, under and in compliance with the restrictions and requirements imposed upon druggists and registered pharmacists by the general laws of the State.

d—That the information should designate the building in which the room therein mentioned is situated, and should describe the room.

6. The existence of the local option law within a county is sufficiently proved by the introduction in evidence of a certified copy of the preamble and resolution of the board of supervisors, ordering prohibition in the county; citing *Friesner v. Common Council*, 91 Mich. 504; *People v. Adams*, 95 Id. 541.

7. An affidavit that said resolution was published "for four successive weeks; that the first of such publications was on the 3d day of March, 1894, and the last on the 31st day of March, 1894,"—shows that the publication was for four successive weeks, and complies with the requirements of the statute.

8. The objection that said resolution prohibits the sale of wine for sacramental purposes, and prohibits druggists or registered pharmacists from selling for purposes allowed by section 15 of the local option act, which provides "that nothing in this act shall be so construed as to prohibit the sale of wine for sacramental purposes, nor shall anything herein contained prohibit druggists or registered pharmacists from selling or furnishing pure alcohol for medicinal, art, scientific, and mechanical purposes, does not affect the rights of a respondent charged with keeping a saloon in violation of the provisions of said act, as the resolution may be proper with those provisions eliminated.

9. It cannot be said that, because witnesses for the people were paid to ascertain if parties in the county were violating the local option law in force in said county, they were hired to procure the crime to be committed; but such fact may be considered by the jury in determining how far the witnesses are entitled to credit.

Exceptions before judgment from Allegan. (Padgham, J.) Argued May 7, 1895. Decided June 4, 1895.

Respondents were convicted of violating the local option law. Conviction affirmed. The facts are stated in the opinion.

*Ed. J. Anderson* (*H. H. Pope* and *H. Hart*, of counsel), for respondents.

*Fred A. Maynard*, Attorney General, and *Fidus E. Fish*, Prosecuting Attorney, for the people.

LONG, J. Respondents were convicted upon an information charging that they—

"Heretofore, to wit, on the 27th day of July, in the year one thousand eight hundred and ninety-four, at the village of Plainwell, in Allegan county, did then and there unlawfully keep a saloon and place where vinous, malt, brewed, fermented, spirituous, and intoxicating liquors, and mixed liquors and beverages, a part of which was intoxicating, were sold, stored for sale, and furnished as a beverage; they, the said Charles E. Whitney and Ellis Aldrich, not selling, storing for sale, or furnishing such liquors as a druggist or registered pharmacist under and in compliance with the restrictions and requirements imposed upon druggists and registered pharmacists by the general laws of the State of Michigan, and such liquors not being wine sold for sacramental purposes, nor pure alcohol sold or furnished by a druggist or registered pharmacist for medicinal, art, scientific, or mechanical purposes; but such liquors were sold, stored for sale, and furnished contrary to the provisions of a certain resolution adopted by the board of supervisors of the county of Allegan, State of Michigan, on, to wit, the 26th day of February, A. D. 1894, in pursuance of Act No. 207 of the Public Acts of the State of Michigan for the year 1889. The aforesaid keeping a saloon and room where such liquors were sold, stored for sale, and furnished by the said Charles E. Whitney and Ellis Aldrich was then and there done in violation of the provisions of said Act No. 207 of the Public Acts of the State of Michigan for the year 1889, which was then in full force and effect in said Allegan county, contrary," etc.

Complaint was made against one Fred Rowe, as well as the two respondents. They all had an examination before the justice. The complaint and warrant charged the offense to have been committed on, to wit, the 30th day of July, 1894. On the examination the respondents

were held for trial. The information was filed against the respondents, and the offense alleged to have been committed on, to wit, the 27th day of July, 1894. The information was filed at the October term, 1894. Counsel for respondents moved to quash the proceedings, on the grounds:

1. That the information does not charge any crime under the laws of this State.

2. That it is not charged in the information that any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or mixed liquors and beverages, a part of which was intoxicating, were either sold, stored for sale, or furnished as a beverage at the time the respondents are charged with keeping a saloon.

3. Nor is it charged that they or either of them sold, stored for sale, or furnished any of the liquors mentioned in Act No. 207 of the Public Acts of 1889.

4. It is not charged that either of the respondents was not selling, storing for sale, or furnishing such liquors as a druggist or registered pharmacist, under and in compliance with the restrictions and requirements imposed upon druggists and registered pharmacists by the general laws of the State.

5. That the respondents have never been examined before a justice of the peace, as required by law, of the offense charged in the said information.

6. That the offense charged in the said information is one that is laid and occurred on a day different from that charged in the complaint in this case, and is a different offense from that charged in said complaint, and upon which examination was had in justice's court.

7. That said information should designate the building in which the room therein mentioned is situated.

8. It should also describe said room.

The case against Rowe was *nolle prossed*. The motion to quash the proceedings was overruled.

1. The first contention is that Act No. 207, Laws of 1889, under which the complaint is made, is unconstitutional, as—

"It provides for excessive fines to be imposed, and causes cruel and unusual punishment to be inflicted, in

violation of article 6, § 31, of the Constitution of the State."

Upon the Legislature alone is conferred the power to fix the minimum and maximum of the punishment for all crimes. *People v. Smith*, 94 Mich. 644. It is true that cases might arise when the punishment imposed by an act would be so cruel and unusual that the courts would interfere and protect the rights of the party, but in the present case the penalties fixed by the act are such as the Legislature had the power to impose.

2. It is contended that, the date charged in the information being a different date than that charged in the complaint and warrant, a separate and distinct offense was charged than that which the parties were examined upon, and the information is therefore bad for that reason. There was some testimony on the examination showing that the offense committed by the two respondents was upon the date charged in the information. The prosecutor was not bound by the date charged in the complaint and warrant. He had the right to inform against the parties for the offense committed on the date shown by the examination. *People v. Annis*, 13 Mich. 511.

The averments in the information are sufficient under the statute, and we are unable to agree with counsel that it is defective upon the grounds stated in the objections.

The complaint was made by Fidus E. Fish, prosecuting attorney of the county, before B. A. Nevins, a justice of the peace, who is a brother-in-law of Mr. Fish. It is contended that this rendered the proceedings before the justice void, under How. Stat. §§ 6822, 7245, prohibiting any justice of the peace from hearing any case where he is related to either party in certain degrees by marriage or blood. The complainant is not a party to the suit, within the meaning of those provisions of the statute. *Parsons v. People*, 21 Mich. 509.

3. On the trial the prosecution offered in evidence a certified copy of the preamble and resolution of the board of supervisors, ordering prohibition in the county. This

was objected to by the respondents on the following grounds:

"1. There is no evidence that the resolution was ever published as required by the statute.

"2. The resolution prohibits the sale of wine for sacramental purposes, and does not state that anything therein contained shall not prohibit druggists and registered pharmacists from selling or furnishing pure alcohol for medical, art, scientific, and mechanical purposes, in accordance with section 2283b4 of the statutes.

"These are objections I will state on record to the proceedings that lead up to the adoption of this resolution and the publication of it:

"3. The call for the special session of the supervisors does not state when the petitions praying for an election were presented to the county clerk in order to show that the call was issued within five days thereafter, and to show that the date set in the call for the meeting of the board is not less than 10 nor more than 20 days from the presentation and filing of such petitions, in accordance with section 5 of Act No. 207 of the Laws of 1889.

"4. The notice of the call for a special session of the board of supervisors under section 5 of the act was not served upon the supervisor from the township of Saugatuck at least 10 days before the time fixed for such meeting, and he was not present at any time during such board meeting, as we will show by the records.

"5. Said notice was not served upon the supervisor from the township of Saugatuck by causing a copy thereof to be delivered to him personally, or by leaving the same at his place of residence, as required by section 5 of the act, and the return of such service is defective in that particular.

"6. The county clerk did not cause to be served upon and delivered to the clerks of the townships and voting precincts of this county, without delay, a certified copy of the order ordering and calling the election, as required by section 6 of the act.

"7. Nor were such orders delivered personally to such clerks, as required by said section 6, as shown by the returns on the files here in the clerk's office.

"8. The affidavit of publishing the order calling the election in the Allegan Journal is by Charles W. Kellogg, foreman, and it states that it was published for three suc-

cessive weeks, and that the first publication was on January 5, 1894, and the last on January 26, 1894. We claim that such a state of facts could not exist, and that there could not be three successive weeks, and have the first publication on the 5th and the last on the 26th; that that skipped one week, and broke the continuity of the publication.

"9. Such affidavit was not filed with the clerk of this court until February 26, 1894, being seven days after the election was held.

"10. The affidavit of publishing such order, showing the publication to be in the Allegan Gazette, was by E. C. Reid, printer, and states that it was published for seven successive weeks; that the first publication was on January 6, and the last on February 17, 1894. We claim that it could not be published seven successive weeks, and have the first and last publications come upon these dates.

"11. That affidavit was not sworn to or filed with the clerk of this court until after the election, to wit, filed on the 26th day of February, 1894, at least seven days after the election was held.

"12. That affidavit was not sworn to and filed until after this resolution was adopted by the board of supervisors.

"13. The ballots printed by the county clerk, and furnished by him to the clerks of each township and voting precinct in the county, did not conform to section 8 of the act, nor to the resolution of the board calling the election, in that they were not in two separate forms and ballots, but the 'Yes' and 'No' ballots were published on one sheet of paper.

"14. Such ballots in that form could not be and were not judiciously distributed at the polls, within the meaning of section 8.

"15. The township clerks and the clerks of the voting precincts in the townships of Wayland, Otsego, Martin, Leighton, and Ganges did not transmit and file with the county clerk within five days after the election any poll list or statement of the number of votes cast at their respective elections, as required by section 10 of said act.

"16. The affidavit of the publication of this resolution offered in evidence here is made by E. C. Reid, of said county, and shows that it was printed in the Allegan Gazette, a weekly newspaper printed and circulated in

said county of Allegan, and that the resolution was published in said newspaper for four successive weeks; that the first of such publications was on the 3d day of March, 1894, and the last on the 31st. We claim that the affidavit is inconsistent with itself, and that it would be impossible to publish that notice for four successive weeks, and have the first publication and the last publication come upon those dates. We claim that the affidavit shows that a week was skipped, and the continuity of the publication was broken.

"17. That affidavit does not show that that resolution was published in that newspaper once in each week for those four successive weeks."

The resolution by the board of supervisors is as follows:

"*Whereas*, an election was duly called by the board of supervisors of the county of Allegan, and held in and for said county, on Monday, the 19th day of February, A. D. 1894, under the provisions of Act No. 207 of the Public Acts of 1889, approved June 29, 1889, to ascertain the will of the qualified electors of said county whether or not the manufacture of liquors and the liquor traffic should be prohibited within the limits of said county; and—

"*Whereas*, sufficient returns and statements of votes cast in the several townships and precincts in said county have been made to said board, as required by the act aforesaid; and—

"*Whereas*, said statements of votes have been canvassed by the said board, and the result thereof ascertained; and—

"*Whereas*, said result was in the affirmative of the proposition to prohibit within said county the manufacture of liquors and the liquor traffic, the majority of the votes of the qualified electors of said county voting thereon voting (Yes) in the affirmative thereof, said majority being 1666; and the said board of supervisors, at a meeting held on the 26th day of February, A. D. 1894, having determined and declared said result as aforesaid, and having entered said canvass of the votes, determination, and declaration of the result, together with a tabular statement of all the votes cast, in full upon the journal of their proceedings for that day:

"Now, therefore, be it resolved by the board of supervisors of Allegan county, that by virtue of the authority conferred upon them under the provisions of said Act No.

207 of the Public Acts of 1889, entitled 'An act to prohibit the manufacture, sale, keeping for sale, giving away, or furnishing of vinous, malt, brewed, fermented, intoxicating, or spirituous liquors, or any mixed liquor or beverage any part of which is intoxicating, and to prohibit the keeping of any saloon or other place for the manufacture, sale, storing for sale, giving away, or furnishing such liquors or beverages, and to suspend the general laws of the State relative to the taxation and regulation of the manufacture and sale of such liquors in the several counties of this State under certain circumstances, to authorize the qualified electors of the several counties in this State to express their will in regard to such prohibition by an election, and to authorize and empower the board of supervisors of the several counties, after such election, if they shall determine the result to be in favor of such prohibition, to prohibit the manufacture, sale, keeping for sale, giving away, or furnishing of any such liquors, or the keeping of a saloon or any place for the manufacture, sale, storing for sale, giving away, or furnishing of the same within their respective counties, and to provide for penalties and rights of action in case of its violation,' approved June 29, 1889, it is hereby ordered that on and after the first day of May, one thousand eight hundred and ninety-four, the manufacture, sale, keeping for sale, giving away, or furnishing of any vinous, malt, brewed, fermented, intoxicating, or spirituous liquors, or any mixed liquor or beverage, any part of which is intoxicating, and the keeping of a saloon or any other place where such liquors are manufactured, sold, stored for sale, given away, or furnished, shall be and is prohibited within the limits of said Allegan county; that this resolution of prohibition shall take full effect within the said county of Allegan on the first day of May, one thousand eight hundred and ninety-four, aforesaid, that being the first day of May after its adoption; that on and after that said day it shall be unlawful within said county of Allegan for any person, directly or indirectly, himself or by his clerk, agent, or employé, to manufacture, sell, keep for sale, give away, or furnish any vinous, malt, brewed, fermented, spirituous, or intoxicating liquors, or any mixed liquor or beverage, any part of which is intoxicating, or to keep a saloon or any other place where any such liquors are manufactured, sold, stored for sale, given away, or furnished within the limits of said county of Allegan, so

long as this resolution of prohibition remains unrepealed; and that on and after the said first day of May, one thousand eight hundred and ninety-four, the provisions of the general laws of this State for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving away, or delivering spirituous and intoxicating liquors, and malt, brewed, or fermented and vinous liquors, shall be and are suspended and superseded, so far as relates to the territory and municipalities within the limits of said county of Allegan, so long as this resolution of prohibition remains unrepealed: *Provided,* however, that all sales of liquors in said county by druggists or registered pharmacists shall be under the restrictions and requirements imposed upon them by the general laws of the State.'

Section 17 of the local option law provides that,—

"Upon the trial for any violation of the provisions of section 1 of this act, it shall be competent to introduce the record, or a certified transcript thereof, of the preamble and resolution,    *    *    *    and such record and transcript shall be the evidence that the provisions of this act are in full force within such county."

In *Fricsner v. Common Council*, 91 Mich. 504, 508, it was said:

"The plain purpose of this provision was to place the result, when once reached by the people, beyond controversy or collateral attack. As it would be competent to call an election of the voters of the county, or indeed to have named in the statute a day for an election to be had, it is likewise competent to empower the board to determine when the prerequisite facts exist which shall authorize them to call an election of the people. This having been done, and the people having acted, their action is final."

And in *People v. Adams*, 95 Mich. 541, in speaking of proof on the trial, it was said:

"It is unnecessary to prove the promulgation of the adoption of the preamble and resolution. Section 17 of the act makes a certified transcript of the record of the preamble and resolution evidence that the provisions of the act are in full force."

These cases answer fully the third, fourth. fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth objections of respondent's counsel.

But section 14 of the act, which requires the filing of a copy with the Secretary of State, specifically provides that:

"The record of such resolution of prohibition and of the publication of notice, and all duly certified copies thereof, shall be the evidence of the facts therein stated so far as relates to the territory and municipalities within the limits of said county; and the regularity of any proceedings prior to the adoption of such resolution by the board of supervisors shall not be open to question on the examination or trial of any person for a violation of any of the provisions of section 1 of this act."

We think the proof of the existence of the local option law within that county was sufficient.

4. The position taken that there was no evidence that the resolution was ever published as required by the statute has no force. The affidavit shows that the publication was for four successive weeks, and it complies with the requirements of the statute.

5. The point that the resolution prohibits the sale of wine for sacramental purposes, and prohibits druggists or pharmacists from selling for purposes allowed by section 15 of the local option act, need not be considered here. It will be time to dispose of those questions when properly presented. Such questions do not affect the rights of the respondents, as the resolution may be proper with those provisions eliminated. The objections to the resolution were properly overruled by the court below.

6. Some question is raised as to the constitutionality of the act. Every provision of the act was under consideration in *Feek v. Township Board*, 82 Mich. 393, and it was there held that there was no constitutional objection to it. We have discovered no reason in the argument of the counsel for respondents for now holding otherwise.

7. We find nothing in the conduct of the court which

warrants the criticism which counsel make.   The court, from the manner of the examination pursued, may have lost patience at the continued repetition of questions and objections, and have gone to some length in compelling counsel to desist; but that was a matter which the court below had a right to control in the orderly conduct of the business of the court.

8. Criticism is also made upon the witnesses for the people by whom the offense was sought to be proven.   It is contended that they were hired to procure the crime to be committed.   We think the evidence does not bear out this contention.   They were paid to ferret out the crime, to ascertain if parties in that county were violating the local option law.   As was said in *People v. Mills*, 94 Mich. 635:

"It is the duty of police officers, not only to aid by all proper means in the arrest and conviction of criminals, but to detect and discover crime."

The court charged the jury, in reference to these witnesses, that they might consider the fact that they were hired to go there, for the purpose of determining how far they were entitled to credit.

From a careful review of the case on the questions raised, we find that no error was committed which calls for reversal.

The conviction must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., took no part in the decision.