IN THE

# SUPREME COURT

OF

# OREGON.

---

Argued July 23, decided 20 Aug., rehearing denied 22 Oct., 1907.

## STATE *v.* CARMODY.

91 Pac. 446, 1081.

INTOXICATING LIQUORS—LOCAL OPTION—PRIMA FACIE EVIDENCE.

1. Under the Local Option Law (Laws 1905, p. 47, c. 2), § 10, providing that the order of the county court declaring the result of an election under the act and prohibiting the sale of intoxicating liquors within the prescribed territory " shall be held to be *prima facie* evidence that all the provisions of the law have been complied with in giving notice of and holding such election, and in counting and returning the votes and declaring the result thereof," such order is *prima facie* evidence of the legality of all previous proceedings in the matter of the election, so that it is unnecessary, on a prosecution for a sale in violation of the act, to allege or prove that a valid election was held, or that a majority of the voters was in favor of prohibition, otherwise than to allege and produce such order.

INTOXICATING LIQUORS—JUDICIAL NOTICE OF QUALITIES OF BEER.

2. A charge of unlawfully selling intoxicating liquor is sustained by proof of sale of "beer," without any further description or testimony as to its intoxicating qualities.

CRIMINAL LAW—AIDING AND ABETTING.

3. An instruction, on a prosecution for an illegal sale of intoxicating liquors, that defendant would be guilty if he aided or assisted another in effecting the sale in violation of law, is not error: B. & C. Comp. § 2153, declaring one who aids and abets in the commission of a crime to be a principal.

INTOXICATING LIQUORS—INDICTMENT—BEVERAGE.

4. Under the general rule that an indictment for a statutory misdemeanor is sufficient if it follows the words of the statute and is reasonably certain in its description of the offense intended to be charged, an indictment charging that defendant did " sell and give to one Q six bottles of intoxicating liquor with an intent and purpose of evading the local option law," etc., is not defective in failing to show that the liquor was intended as a beverage, since those are the words of the statute.

INDICTMENT—PLEADING EXCEPTIONS.

5. Exceptions and provisos in criminal statutes need not be pleaded in indictments unless they are descriptive of the offense or necessary to its definition.

From Marion: GEORGE H. BURNETT, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

On October 6, 1906, the District Attorney of the Third Judicial·District filed in the circuit court for Marion County an information charging defendant Henry Carmody with the crime of selling intoxicating liquors. The material parts of the information are as follows:

"That at the general election held in the County of Marion, State of Oregon, on the 4th day of June, 1906, the question whether there should be prohibition of the sale of ·intoxicating liquor for beverage purposes for Horeb Precinct, Marion County, State of Oregon, was submitted to the legal voters of said precinct, county and state, and then and there duly determined by a majority of the legal voters of said precinct at said election in favor of prohibition, and that the sale of intoxicating liquor should be prohibited in said precinct.

That thereafter, on the 15th ·day of June, 1906, the County Court of Marion County, State of Oregon, duly made and entered of record an order declaring the result of said vote and absolutely prohibiting the sale of intoxicating liquors as a beverage in said Horeb Precinct as a whole, and declaring it to be unlawful to sell, exchange or give away any intoxicating liquor for beverage purposes within said Horeb Precinct until such time as the qualified voters therein by a majority vote declared otherwise.

That thereafter, to-wit, on the 2d day of September, 1906, in the Precinct of Horeb, County of Marion, State of Oregon, Henry Carmody, then and there being, did then and there ·wrongfully and unlawfully sell and give to one Royal Shaw and William Quinn jointly six bottles of intoxicating liquor, of the value of $1.50, with an intent and purpose then and there had by him, the said Henry Carmody, of evading the provisions of the local option law of the State of Oregon, proposed by the people of initiative and enacted by the people of the State of Oregon by a majority of the votes cast thereon at the general election held in said state on the 6th day of June, 1904, contrary to the provisions of said law in such cases made and provided, and against the peace and dignity of the State of Oregon."

A demurrer to the information was filed on the grounds: (1) That it does not state facts sufficient to constitute a crime; (2) that it does not show any violation of the law by defend-

ant; (3) that it does not show that the question of prohibition in Horeb Precinct was submitted to the legal voters of such precinct; (4) that it does not show that the legal voters of such precinct determined by their vote or at all that intoxicating liquor should not be sold or given away in such precinct; (5) that it does not show that the county court had power or authority to make the order of prohibition stated in the information. This demurrer was overruled, and defendant pleaded not guilty. Thereupon a trial was had before the court and a jury.

The testimony for the state tended to show that in September, 1906, two men, Shaw and Quinn, went to the house of defendant, in the Precinct of Horeb, Marion County, and inquired if they could buy some beer from him. Defendant told them he had none, but could get some for them, and went away, returning in a short time; that a few minutes later a man by the name of Baty brought six bottles of beer in a sack and laid them on the floor just inside of defendant's door and went away. Shaw and Quinn had no conversation with Baty about the beer, or the purchase or payment therefor. After Baty had gone they paid defendant $1.50 for the beer and took it away with them. There was no evidence adduced by the state tending to show the character of the beer, other than it was in bottles having thereon the label of the Albany Brewing Company. The defendant in his own behalf testified that when Shaw and Quinn came to his house they asked him if he had any beer, and he answered in the negative; that thereupon they inquired of him if beer could be procured in the town, and he told them that Baty had a barrel, and they requested him to purchase some from him, as they were not acquainted with Baty; that he went to where Baty was, and told him that Shaw and Quinn wanted six bottles of beer, and soon after he returned Baty brought the beer in a gunny sack and placed it on his porch; that one of the men paid him $1.50 for the beer, and he handed the money to Baty in their presence; that he did not own the beer, and was acting merely as an accommodation to the purchasers. The state to sustain the issues on its part introduced, and there was admitted over defendant's objection, a certified copy of the order or judgment

of the County Court of Marion County, declaring that a majority of the votes cast in Horeb Precinct, in the June election in 1906, was in favor of prohibition, and prohibiting the sale of intoxicating liquor in such precinct until the legal voters thereof should otherwise determine.

The court instructed the jury that, as a matter of judicial knowledge, beer is an intoxicating liquor; that it was not necessary for the state to prove that defendant owned the beer, or was interested in the money received therefor, but that if the beer belonged to Baty, and the money was received by him, the defendant would be guilty if he aided or assisted Baty in effecting the sale in violation of law. The defendant was convicted, and appeals, assigning error in overruling his demurrer to the information, in the admission of the record of the county court prohibiting the sale of intoxicating liquor in Horeb Precinct, and in the giving and refusal of the instructions referred to.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. William Henry Holmes.*

For the State there was a brief over the names of *A. M. Crawford,* Attorney General, *John H. McNary,* District Attorney, and *C. L. McNary,* with an oral argument by *Mr. John H. McNary.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. The objection to the information, and to the competency of the record of the county court declaring the result of the election and prohibiting the sale of intoxicating liquor in Horeb Precinct, is, in substance, that it is not alleged in the information, nor was it shown at the trial, that a legal and valid election to decide whether the sale of intoxicating liquor should be prohibited in such precinct was ordered or held as required by law. Section 10 of the local option law (Laws 1905, p. 47, c. 2) provides that the order of the county court declaring the result of an election held under its provisions and prohibiting the sale of intoxicating liquor within the prescribed territory "shall be held to be *prima facie* evidence that all the provisions of the law

have been complied with in giving notice of and holding such election, and in counting and returning the votes and declaring the result thereof." The plain purpose of this provision is to make the order of the county court *prima facie* evidence of the legality of all previous proceedings in the matter of the election. It is therefore unnecessary, in a prosecution for a violation of the act, for the state to allege or prove that a valid election was held, or that a majority of the voters in the county, subdivision or precinct, as the case may be, was in favor of prohibition. The order of the county court is *prima facie* evidence of these facts, and the production of such an order is all that is required by the state to make out its case. It is thereafter open to the defense to overcome such *prima facie* case by proving that the essential steps provided by the statute were not taken. This is the interpretation given a similar provision in a local option law by the courts of Missouri and Michigan: *State v. Searcy,* 46 Mo. App. 421: 111 Mo. 236: 20 S. W. 186; *People* v. *Whitney,* 105 Mich. 622 (63 N. W. 765).

2. The courts are not in accord as to whether a charge of unlawfully selling intoxicating liquor is sustained by proof that the liquor sold was "beer," without anything giving to it a particular description, or evidence that it was intoxicating. In a number of decisions it is held that the word "beer" is a generic term, including both a class of alcoholic liquors and a class of nonintoxicating beverages, such as "root beer," "ginger beer," "spruce beer" and the like, and therefore it cannot be said in its ordinary meaning to imply an intoxicating drink, unless such import has been given it, either by statute or by decisions of the courts. *Blatz* v. *Rohrbach,* 116 N. Y. 450 (22 N. E. 1049: 6 L. R. A. 669), is a leading example of this class of cases. But Mr. Black says that this is not the approved rule. "On the contrary, the preponderance of authority is to the effect that when the word 'beer' is used, without any restriction or qualification, it denotes an intoxicating malt liquor; that when thus occurring in an indictment or complaint, or in the evidence, it is presumed to include only that species of beverages; and that, being taken in this sense, it will be sufficient, unless it is shown by evidence

that the particular liquor so described is nonalcoholic": Black, Intoxicating Liquors, § 17. Mr. McClain is of the same opinion (2 McClain, § 1220), and so are the editors of the Am. & Eng. Enc. of. Law (volume 17, p. 201). The adjudications on both sides of this question are collated and cited by these authors, and it is sufficient to say we concur in the views expressed by them.

The reasons which impel us to this conclusion are so clearly and forcibly stated by Mr. Justice ORTON, in *Briffitt* v. *State,* 58 Wis. 39 (16 N. W. 39: 46 Am. Rep. 621), that we quote from his opinion at some length: "As long as laws for licensing the sale of intoxicating liquors have existed, brandy, whisky, gin, rum and other alcoholic liquids have been held to be intoxicating liquors *per se;* and why? Simply because it is within the common knowledge and ordinary understanding that they are intoxicating liquors. By this rule of common knowledge courts take judicial notice that certain things are verities, without proof; as, in *Chambers* v. *George,* 5 Litt. (Ky.) 335, the circulating medium in popular acceptation was held to mean 'currency of the state,' and in *Lampton* v. *Haggard,* 3 T. B. Mon. (Ky.) 149, the circulating medium was held to mean 'Kentucky currency,' and in *Jones* v. *Overstreet,* 4 T. B. Mon. (Ky.) 547, the word 'money' was held to mean paper currency. If a witness on the stand were asked whether whisky is intoxicating, he would be apt to smile as at a joke; and an intelligent witness, when asked the same question in relation to beer, might smile with equal reason. Words in contracts and laws are to be understood in their plain, ordinary and popular sense, unless they are technical, local or provincial, or their meaning is modified by the usage of trade: 1 Greenleaf, Evidence, § 278. When the general or primary meaning of a word is once established by such common usage and general acceptation, we do not require evidence of its meaning by the testimony of witnesses, but look for its definition in the dictionary. Whisky, according to Webster, is 'a spirit distilled from grain'; and beer, according to the same authority, is 'a fermented liquor made from any malted grain, with hops and other bitter flavoring matter.' It is true

that to a limited extent there are other kinds of beer, or of liquor called 'beer,' such as 'small beer,' 'spruce beer,' 'ginger beer,' etc.; but such definitions are placed as remote and special, and not primary or general.

So it may be said of other substances having a common name and meaning, such as milk or tea. Milk, according to Webster, is 'a white fluid secreted by female mammals for the nourishment of their young.' There are other kinds of milk, however, such as 'the white juice of plants,' which is the remote definition, or milk in the cocoanut, or that in the Milky Way. Tea is defined to be 'leaves of a shrub or small tree of the genus Thea or Camellia. The shrub is a native of China and Japan.' There are other kinds of tea, such as sage tea and camomile tea, etc. The latter are the restricted uses of the word. When asked to take a drink of milk, or a cup of tea, it would not be necessary to prove what is meant. Why is it more necessary to prove what is meant by a glass or drink of beer? When beer is called for at the bar, in a saloon or hotel, the bartender would know at once, from the common use of the word, that strong beer—a spirituous or intoxicating beer—was wanted; and, if any other kind was wanted, the word would be qualified, and the particular kind would be named, as root beer, or small beer, etc. When, therefore, the word 'beer' is used in a court by a witness, the court will take judicial notice that it means a malt and an intoxicating liquor, or such meaning will be a presumption of fact, and in the meaning of the word itself there will be *prima facie* proof that it is malt or intoxicating liquor that is meant. When the witnesses in this case testified that the defendant sold to them beer, the prosecution had sufficiently proved that he had sold to them a malt and intoxicating liquor, for both qualities are implied in the word 'beer.' This, as a logical conclusion and principle of law, would seem to be well established by common reason, and we think it would be difficult to find a single good reason against it." See, also, *United States* v. *Ducournal* (C. C.) 54 Fed. 138.

3. The instruction, that if defendant aided and assisted Baty in committing the crime of selling intoxicating liquor he was

guilty as charged in the indictment, was but stating a rule of statutory law, and was not error: B. & C. Comp. § 2153.

The judgment is affirmed.                    AFFIRMED.

---

Decided 22 October, 1907.

ON MOTION FOR REHEARING.

91 Pac. 1081.

Opinion by MR. CHIEF JUSTICE BEAN.

It is claimed that the indictment in this case is insufficient because it is not averred that the liquor which defendant is charged with having sold was for beverage purposes. Section 15 of the local option law (Laws 1905, p. 48) provides that when an election held under the provision of the law has resulted in favor of prohibition, and the county court has made the order declaring the result, and the order of prohibition, any person who shall thereafter, within the prescribed bounds of prohibition, sell, exchange or give away, with the purpose of evading the provisions of the law, any intoxicating liquors, shall be subject to prosecution by information or indictment, etc. This is the penal section of the law, and one defining the crime. The indictment in question follows the language of the statute and it is the settled rule in this state that in indictments for misdemeanors created by statute it is sufficient to charge the offense in the words of the statute subject to the qualification that the crime must be set forth with such certainty as will apprise the accused of the offense imputed to him: *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028).

Exceptions and provisos in a criminal statute need not be negatived in indictments unless they be descriptive of the offense or a necessary ingredient in its definition: *State* v. *Tamler,* 19 Or. 528 (9 L. R. A. 853: 25 Pac. 71). The indictment in this case conformed to the rule of law above stated, and is, therefore, sufficient.

Petition denied.          AFFIRMED: REHEARING DENIED.