Argued at Pendleton October 27; affirmed December 9, 1930

## STATE *v.* FROHNHOFER ET AL.

(293 P. 921)

*Bernard Ramsey* of Madras (Lewis H. Irving of Madras on the brief) for appellants.

*Bert C. Boylan,* District Attorney, of Madras for respondent.

BEAN, J. The defendants, Henry Frohnhofer and Ben Lilla, were jointly indicted with one J. W. Miller for the crime of operating a distillery for the purpose of manufacturing liquor for beverage purposes. Miller was not apprehended. The defendants Frohnhofer and Lilla were jointly tried and convicted and sentenced to be confined in the state penitentiary for a term not exceeding eighteen months. Henry Frohnhofer and Ben Lilla appeal.

Henry Frohnhofer, at the time of the alleged offense, had a contract to purchase certain real property in Jefferson county, Oregon, in the vicinity of Grizzly postoffice, known as the Pahlmain or McMeachan place. Frohnhofer was living upon his home place six or eight miles distant from the Pahlmain place, by the county road, and about one and one-half miles distant, directly over the mountain.

The facts, as shown by the testimony, are substantially as follows: On the morning of April 26, 1930, at about 6:45, a group of officers, headed by Sheriff Dussault, came to the Pahlmain place in search of a

still. The sheriff was accompanied by Sheriff Ayers of Crook county and some of the latter's deputies. When they arrived they found at the place, and in bed in one of the buildings, the defendant Lilla and a man named Jack Church, and in another building the defendant Henry Frohnhofer. A search of the surrounding country led to the discovery of two large mash vats, on adjoining property belonging to a lumber company, about a quarter of a mile southeast of the Pahlmain buildings and about fifty feet from the division line, and a large still upon the lumber company property, about half a mile to the northeast of the Pahlmain house and a few feet from an old road. When the sheriff and his assistants arrived, the defendant Frohnhofer was seen only by a deputy from Crook county, who was a stranger to him, and on learning from Jack Church, a neighbor, that Sheriff Dussault was on the place, Frohnhofer left without being seen by the sheriff's posse. A short time later the defendant Frohnhofer was found by Sheriff Ayers and one of his deputies at the still pouring moonshine whiskey from a vat into a small keg. The still and the mash barrel connected with it were hot. On being found in this act the defendant Frohnhofer made some remark about getting a drink and inquired how he could find Sheriff Dussault. Upon being told that the sheriff was down at the house he started toward the house, stating that he was going to see the sheriff. He went part way and then circled back around the still in the timber without being seen again and went to his home place about a mile and one-half over the mountain. The officers found an old road leading to the vats and to the still which had been recently used and was marked by wagon tracks, which ended a short distance beyond the still, where it appeared the wagon

had been turned around. A wagon was found at the still which Frohnhofer had been using. The still and vats were located in a rough, hilly country, mostly timbered. The officers there found four or five hundred pounds of wheat and rye in the bottom of one vat and about four hundred gallons of mash that was working in the other. At the still they found about seventy-five gallons of first-run whiskey and about six gallons of mash whiskey in a ten-gallon keg and two fifty-gallon barrels of mash.

We experience considerable difficulty in examining this record, as some of the assignments of error refer to the bill of exceptions and the bill of exceptions refers to the transcript of testimony. There is not sufficient evidence or matter set forth in one place in the bill of exceptions to explain the exception: Oregon Code 1930, § 2-703; Or. L., § 171.

██ Defendant predicates error upon the ruling of the court upon a question termed "leading." The witness, Deputy Sheriff McKenzie from Crook county, in answer to the question, "What did you find up there, if anything?" stated, "Nothing; went up just a little ways to where the wagon turned around." The district attorney then said, "You found a turn-around over there?" and the witness answered, "Yes, sir." Objection was then made that the question was leading. This objection came too late. The question had been answered. The proper manner of raising an issue in regard thereto would have been to move to strike it out. The question, so termed, however, is nothing more than a repetition of the answer of the witness in a little different language. There was no suggestion of an answer. The reversal of a judgment will not be had for the reason that a leading question was permitted, the matter being within the discretion of the

trial court, unless there is a clear abuse of such discretion: *State v. Haynes,* 116 Or. 635 (242 P. 603).

At the appropriate time counsel for defendants moved the court for a directed verdict of acquittal in favor of defendants, and assigns the refusal. thereof as error. The defendants urge that there was no substantial competent evidence "indicating the guilt of defendant," referring, as we understand it, to defendant Frohnhofer. The defendant Ben Lilla, who was an employee of Frohnhofer, made a statement to Sheriff Dussault soon after the arrest, which was testified to by the sheriff, and, together with the other circumstances which are shown by the testimony, was sufficient to sustain the verdict against him. As we understand the brief, it refers to one defendant, Frohnhofer.

A careful examination of the testimony in the case thoroughly satisfies us that the motion for a directed verdict of acquittal could not be granted. It is largely based upon the fact that the evidence was circumstantial. Without defining "evidence", the term usually applied to such testimony, as was adduced in the present case, is "caught with the goods." Frohnhofer was at the still, which has already been described as having recently been in full operation, with coals of fire remaining and the still and vats hot, pouring whiskey into a keg. It is urged by defendant's counsel that this is not the operation of a still. We do not understand that the operation of a still is confined to running the still and manufacturing liquor just as the liquor is pouring out. The work in and about a still, handling the liquor after it has been run through the still, seems to us to be a part of the operation. Moreover, the testimony tended to show that the defendant Frohnhofer was exercising acts of proprietorship over the distil-

lery, which indicated to the jury that he was interested therein or was the proprietor thereof. The circumstances of this case, which occurred up there in the hills in Jefferson county, in a somewhat remote district, were all delineated to the jury and it was for them to say whether they would believe the explanation made by defendant Frohnhofer, that he was merely at the still to get a drink of whiskey, or whether he was interested in the operation of the still for the purpose of manufacturing liquor for beverage purposes. There was no error in denying the motion for a directed verdict of acquittal.

■■ The defendant called as a character witness one Jack Church who stated in substance that the general reputation of defendant Frohnhofer in the community in which he lived, as far as he knew, was good. The district attorney, upon cross-examination, propounded to this witness the following question:

"Q. You know, as a matter of fact, don't you, Jack, that Hank (referring to defendant Henry Frohnhofer) had been in trouble before the courts?

"A. I don't know anything about that he had ever been in trouble or not."

Therefore, the defendant was in no way prejudiced by the question.

Where the defendant puts his character in issue and invites inquiry thereof, the state may inquire into the extent of the character witness's knowledge, and test his accuracy, veracity and credibility by questions as to former convictions and relating to the repute of defendant in the community inconsistent with good reputation: *State v. Doris*, 51 Or. 136 (94 P. 44, 16 L. R. A. (N. S.) 660); *State v. Bateham*, 94 Or. 524 (186 P. 5). Where the witness, on cross-examination, answers

the question and nothing is adduced before the jury which would prejudice the rights of defendant, as in this case, no error can be predicated upon such an interrogatory: *State v. Shull,* 131 Or. 224 (282 P. 237).

■ Defendant assigns error in that part of the instruction of the court to the jury to the effect that they might take into consideration all of the evidence, "the actions of defendant, his manner and conduct upon the witness stand." The defendants were witnesses in their own behalf. The statute provides that the presumption that a witness is speaking the truth may be overcome by the manner in which he testifies, and by the character of his testimony, and, we think, governs the question raised: Oregon Code 1930, § 9-203; Or. L., § 704. There was no error in this respect.

■■ Defendant assigns error in the instructions to the jury to the effect that all persons concerned in the commission of a crime, whether it be a felony or misdemeanor, whether they directly commit the act constituting the crime or "knowingly" aid and abet in its commission, although not present, are principles, and are to be tried and punished as such. The court gave an explanation in which the word "knowingly" was supplied in the instruction. We find no error in giving such an instruction: Oregon Code 1930, § 14-1002; Or. L., § 2370; *State v. Carmody,* 50 Or. 8 (91 P. 446, 1081, 12 L. R. A. (N. S.) 828); *State v. Start,* 65 Or. 178 (132 P. 512, 46 L. R. A. (N. S.) 266). We have carefully read the charge of the learned trial judge given to the jury and find no error therein.

The judgment of conviction must be affirmed.

Coshow, C. J., concurs.

Rand and Kelly, JJ., concur in the result.