Argued July 7, affirmed September 27, 1977

# TROUTMAN et al, *Respondents,*
### *v.*
# ERLANDSON, *Appellant.*
## (TC 93993, SC 24785)

569 P2d 575

Robert J. Morgan, Milwaukie, argued the cause for appellant. Ralf H. Erlandson, Milwaukie, filed briefs in propria persona.

Gerald R. Pullen, Portland, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, and Holman,* Tongue and Lent, Justices.

TONGUE, J.

---

*Holman, J., did not participate in this decision.

## TONGUE, J.

This was an action for contribution. Plaintiffs' complaint alleges that plaintiffs had paid a $44,000 obligation owed jointly by plaintiffs and defendant and that defendant was obligated to "make contribution of one-third of said debt * * * or the sum of $16,500."[1]

Defendant's answer included, in addition to a general denial and three affirmative defenses, a counterclaim for $50,000 in damages alleging, among other things, that plaintiffs "know full well that this defendant was not to be responsible for any part" of the $44,000 obligation and were "attempting to use this litigation as a form of coercion" to "cause defendant to be unable to pursue his rights and remedies in protecting his property rights * * *."

The case was tried before a jury, which returned a verdict in favor of plaintiffs.[2] Defendant appeals from the resulting judgment.

Defendant's principal assignment of error is that the trial court erred in failing to grant defendant's motion for mistrial based upon alleged misconduct by plaintiffs' attorney in asking an improper and prejudicial question during his cross-examination of the defendant. In order to properly decide this contention it is necessary to consider the context in which that question was asked.

It appears that the sum of $16,500 demanded by plaintiff as a "contribution" from defendant arose from two promissory notes representing loans to a partnership between defendant, an attorney, and plaintiff Troutman. That partnership apparently owed over $1,000,000 in debts and was the subject of a suit

---

[1] By a second cause of action plaintiffs also sought to recover $1,200 as the reasonable value of furniture "had and received" by defendant from plaintiffs and for which defendant had refused to pay.

[2] That verdict was for the full amount of the prayer of the complaint and included $16,500 as "damages" and $1,200 for "furniture."

filed by plaintiff Troutman against defendant for dissolution and an accounting.

Defendant testified on direct examination, in support of his counterclaim for damages, that he had told plaintiff Troutman that he was negotiating with one Dale Fackrell to "come up with $140,000" to pay on the partnership indebtedness; that at that time creditors of the partnership were threatening foreclosure and that if he had been able to obtain the $140,000 he would have been able to "remove" the threat of foreclosure and then "acquire a percentage ownership" in the partnership. Defendant then testified that "[b]y filing this action * * * what Mr. Troutman did was to wipe out my opportunity to find an investor who would come up with $130,000" and that this "business opportunity" was "of value" to him "in excess" of $150,000.

In the cross-examination of defendant on his claim that "filing this lawsuit caused you to be unable to secure $140,000 from Mr. Fackrell," plaintiffs' attorney asked the following question:

"Now, in truth and fact, sir, is it not true that your own client, Mrs. Castor, sued you in this very courthouse in this last year for fraud, defrauding her, and let me finish my question, sir, if you allow me, and secured $30,000 in punitive damages and $9,000 in general damages against you for defrauding her?"

Defendant objected to that question and moved for a mistrial. That objection and motion were then argued in chambers.

Plaintiffs' attorney contended that to impeach defendant's claim that the filing of this action "wiped out his opportunity to find an investor for $140,000 * * * we would show that this is not the real truth; that there would be other lawsuits that could affect that ability;" that "Mr. Troutman wasn't the only person with lawsuits against him," and that "[i]f I can't bring that in, they [the jury] are going to think

[ 598 ]

that it was only Troutman that prevented you from getting a loan."

In response, defendant Erlandson contended that:

"He's misstated the facts. Of course, the Castors were never my clients. That lawsuit would take a good deal of explanation and is entirely collateral to this. He injected it strictly to prejudice the jury against me, to bring up a false issue and to deny me the right to a fair trial. He deliberately misstated the facts, saying weren't Castors my clients, and *he knows better than that or should know better than that.*" (Emphasis added.)

and that:

"He's going to force me, your Honor, to go into completely the Castor thing and there's no way I can keep from going into it without further prejudicing myself."

The trial court then ruled:

"That's a matter of choice for you. I am denying the motion."

Plaintiffs' attorney then said:

"All right. I will leave it then."

Upon resumption of the cross-examination before the jury, plaintiffs' attorney did not repeat the question objected to, but proceeded to ask questions on other matters. Upon completion of the cross-examination defendant Erlandson did not "go into" the "Castor thing," but offered no re-direct testimony and then "rested." He did not call Mr. Fackrell as a witness.

In his briefs on this appeal defendant Erlandson charges that:

"* * * plaintiffs' counsel knew his statement was erroneous as stated, and pursued the question solely for its highly misleading and prejudicial effect."

and that:

"He intentionally tainted the jury * * *."

[ 599 ]

Thus, according to defendant,

"* * * appellant's first assignment of error concerns two basic and closely related questions:

"(1) Whether an attorney may with impunity ask suggestive and highly prejudicial questions, *known by him to be erroneous as worded.*

"(2) Whether an attorney may examine a witness as to matters normally relevant, *but known by the examining witness [attorney?] to be in fact irrelevant.*

"As stated in appellant's brief, counsel for appellee was fully aware of the Castor case; that the Castors were not clients of appellant, and that recovery was rendered on the theory of failure to disclose, not active fraud. Counsel was also fully aware that Mr. Fackrell, appellant's primary hope for raising $140,000.00, was fully aware of the Castor litigation and was unaffected thereby.

"* * * His own explanation of his purpose in asking the question was to suggest other causes for appellant's inability to borrow $140,000.00 (TR 112). The purpose is laudable on the surface, but *in view of counsel's knowledge of its actual irrelevancy, as opposed to an abstract situation where counsel has a reasonable belief in a question's relevancy,* the question here complained of was asked without justification or excuse, was known to be inconsistent with the trust [truth?], and was designedly misleading."[3] (Emphasis added)

Thus, defendant appears to concede that the question asked by plaintiffs' attorney would not have required a mistrial if he had a "reasonable belief" in the "relevancy of the question," but contends that in this case the question was not only improper, but required a mistrial because it was "known" to be "inconsistent with the truth" and was "designedly misleading."

These are strong charges to be leveled by one

---

[3]Similarly, defendant charges in his brief that:

"Mr. Pullen knew * * * that Mr. D. Fackrell knew about the Castor litigation, and that it was the institution of suits by plaintiffs which caused Mr. Fackrell to discontinue negotiations for the $140,000 investment."

attorney against another, unless supported by the record. The difficulty, however, is that defendant's charges (which are denied by plaintiffs' attorney) are not supported by the record in this case.

It may be that the Castors were not clients of defendant Erlandson, but nothing in the record supports his charge that plaintiffs' attorney knew that fact. Neither is there anything in the record to support the charge that plaintiffs' attorney knew that the Castor case was not for "active fraud," but for a "failure to adequately disclose." On the contrary, this court may take judicial notice of its recent decision in *Castor v. Erlandson,* 277 Or 147, 152-53, 560 P2d 267 (1977). It appears from that decision that the complaint in that case alleged "defendant [Erlandson] represented [to Castor] that the Jacksons could convey good title but that this was false and defendant knew it was false," as well as an allegation that "defendant had a duty to disclose the full extent of the indebtedness" and that a jury verdict against defendant Erlandson for general and punitive damages totalling $38,500 was affirmed by this court.

In *State v. Bateham,* 94 Or 524, 186 P 5 (1919), this court considered a similar problem. In that case defendant called character witnesses who testified that his reputation as a moral, law-abiding man was good. On cross-examination the prosecuting attorney, over defendant's objection, was permitted to ask each witness in substance if he had ever heard that the defendant had taken "improper liberties" similar to that described in the indictment with another little girl, named in the question. Each witness answered in the negative. On appeal defendant contended that this was error because the prosecuting attorney informed the jury by innuendo that defendant was guilty of, or at least charged with, other like crimes. In rejecting that contention, in the absence of some showing that the prosecuting attorney acted in bad faith in asking those questions, this court said (at 530-32):

"* * *. Here the moral character of the accused was

[ 601 ]

drawn directly in question. He himself invited inquiry about it by putting in testimony in general terms about his good character. Certainly the prosecution legitimately could ask the general cross-interrogatory if the witness had ever heard of the defendant's doing acts of the same kind as that charged.

"* * * * *.

"It is quite impossible definitely to fix the boundary between pettifoggery on one hand and proper cross-examination on the other, so as to govern all cases with exactness. It must be left to the discretion of the presiding judge, acting in the light of the circumstances of the case before him, subject to reversal if an abuse of discretion appears.

"* * * * *.

"No abuse of the court's prerogative appears. It is urged that the district attorney did not expect an affirmative answer to any such question, but there is nothing in the record by which we can determine that matter. If, in truth, he asked the questions solely for the purpose of intimating to the jury that the defendant was guilty on other charges of like nature, which he could not prove directly and which had no foundation within his knowledge or information, he was guilty of a most contemptible, unprofessional piece of pettifoggery. It would be beneath the dignity of any practicing lawyer, much more of a public prosecutor, and should lead to a reversal. But that situation is not made to appear and the assignment of error on that point must be disregarded."

The rule of *State v. Bateham, supra,* permitting such cross-examination has been subsequently reaffirmed in *State v. Harvey,* 117 Or 466, 472, 242 P 440 (1926); *State v. Matson,* 120 Or 666, 671, 253 P 527 (1927); *State v. Shull,* 131 Or 224, 229, 282 P 237 (1929); *State v. Frohnhofer,* 134 Or 378, 383, 293 P 921 (1930); and *State v. Linn,* 179 Or 499, 514, 173 P2d 305 (1946). It is also the majority rule in other jurisdictions which have considered the matter when such questions are asked in good faith. *See* Annot, 71 ALR 1504, 1521, 1541-43 (1931); Annot, 47 ALR2d 1258, 1280, 1316-20 (1956). *See also* McCormick on Evidence

456-58, § 191 (2d Ed 1972). Although the asking of such questions in bad faith may be ground for reversal, it is generally held that the good faith of the cross-examiner is, in the first instance, to be presumed, i.e., that there is a presumption of good faith in such cases. *See* Annot, 47 ALR2d *supra,* at 1319.

The inherent danger of prejudice in permitting such cross-examination of character witnesses in criminal cases would appear to be at least as great, if not greater, than the danger of prejudice from the asking of the question on cross-examination in this case. In addition, the possible relevance of the question asked in this case would appear at least as great, if not greater, than the relevance of such cross-examination in many criminal cases.

■ Here, to paraphrase *Bateham,* the question whether the filing of this lawsuit prevented defendant from securing $140,000 from Mr. Fackrell was put "directly in question" by defendant's testimony on direct examination. It follows that plaintiffs' attorney "legitimately could ask" if another lawsuit, and one based on fraud, had also been filed against defendant resulting in a judgment for an even larger sum of money. In such event, the jury could properly infer that such a lawsuit, rather than this lawsuit, was the reason that defendant was unable to get Mr. Fackrell to "put up" the $140,000.

As for the possibility of "pettifoggery," as also discussed in *Bateham,* such as in the possible event that plaintiffs' attorney knew that no such lawsuit had been filed and asked that question in bad faith, it would appear that in this case, as in *Bateham* "there is nothing in the record by which we can determine that matter."

As previously noted, however, it does appear that there was another lawsuit against defendant for fraud which resulted in a judgment against defendant for $38,500. Yet defendant, in statements to this court in his briefs, says that the other lawsuit did not involve

"active fraud" and that plaintiffs' attorney was "fully aware" of that alleged fact. Defendant also states in his briefs that plaintiffs' attorney was also "fully aware" that Mr. Fackrell was "fully aware of the Castor litigation and was unaffected thereby," despite the fact such statements go outside the record and that no such contentions were made in the trial court. Under these circumstances, it would appear that defendant is not in the best of positions to accuse a fellow attorney of bad faith.

In the trial court defendant's primary contention was that "the Castors were never my clients" and that plaintiffs' attorney "knows better than that *or should know better than that.*" If the prejudice to defendant arose from the fact that the plaintiff in the pending action against him was not a client, but was someone other than a client, defendant might well have removed any such prejudice by offering evidence to that effect. When, however, defendant stated to the trial court that "[h]e's going to force me * * * to go completely into the Castor thing," the plaintiffs' attorney stated that he would "leave it there," and did not demand an answer to the question which was the subject of defendant's objection. Defendant then chose not to testify that "the Castors were never my clients" or to attempt any explanation of the pending action for fraud.

According to plaintiffs, what defendant was trying to do in the trial court was "to keep from the jury that another lawsuit for fraud was actually pending against him," for the reason that a judgment of $38,500 for fraud is much more harmful to one's credit than law actions which may never result in judgment." Whether or not that was defendant's actual purpose, the trial judge could reasonably have drawn such an inference under the record in this case.

■ Under these circumstances, we think it proper to hold, as held in *Bateham,* that the question of whether plaintiffs' attorney was guilty of the serious charge of

bad faith was a matter to be "left to the discretion of the presiding judge, acting in the light of the circumstances before him," and that there was "no abuse of the court's prerogative" in this case.

■ This result is also consistent with the established rule in appeals from the denial of motions for mistrial based upon alleged improper arguments or other statements by counsel in jury cases. That rule, as stated in *Kuehl v. Hamilton,* 136 Or 240, 244, 297 P 1043 (1931) is that:

> "Control over the argument of counsel is intrusted largely to the discretion of the trial judge. In *Huber v. Miller,* 41 Or. 103 (68 P. 400), Mr. Justice Wolverton said:
>
>> 'It is usually however, within the discretion of the trial judge to determine whether counsel transcend the limits of professional duty and propriety in this particular, and the exercise of such discretion is not the subject of review, except where they are permitted to travel out of the record, or to persist in disregarding the admonitions of the trial judge, or to indulge in remarks of a material character so grossly unwarranted and improper as to be clearly injurious to the rights of the party assailed.'
>
> "It is unnecessary to add further citations to the numerous ones assembled by Judge Wolverton in support of his above statement. Obviously the judge who presides over the trial, and who becomes familiar with its atmosphere, is best able to determine whether an excursion into a forbidden field is prejudicial, the extent of the injury, if any, and what remedies must be applied to undo the harm."

Our decision in *Walker v. Penner,* 190 Or 542, 554, 227 P2d 316 (1951), the only case cited by defendant on this assignment of error, states substantially the same rule, citing *Kuehl v. Hamilton, supra,* with approval.

■ This result is also consistent with the general rule that the right of cross-examination extends not only to any matter stated in the direct examination of a witness, but also to any matter "connected therewith," and that "great latitude" should be allowed in cross-

[ 605 ]

examination to include other matters which tend to limit, explain or qualify them or to rebut or modify any inference arising from facts or matters stated on direct examination.[4] Also, we have held that the scope of permissible cross-examination "rests largely in the discretion of the trial judge."[5]

We recognize the danger that the rule of "great latitude" in cross-examination may, on occasion, be abused by lawyers who, out of "pettifoggery" and in bad faith, may ask questions designed to suggest or intimate to the jury matters that are not properly admissible and which may be prejudicial.[6] It may be in such a case that "pettifoggery" and bad faith in the asking of such a question appears on the face of the record or is otherwise obvious, so as to require the granting of a mistrial. This is not such a case, however, in our opinion.

It may also be that in some such cases the trial judge should, on motion for mistrial and out of the presence of the jury, question the attorney as to whether he has credible grounds to ask such a question. *See* McCormick on Evidence 458 n. 79, § 191 (2d ed 1972). In this case, however, no such request was made by defendant in the trial court and no such contention was made by him in this court.

Under all of the circumstances of this case, and for the reasons previously stated, we hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.[7]

---

[4] *See* ORS 45.570, *Ah Doon v. Smith,* 25 Or 89, 93-94, 34 P 1093 (1893); and *Miller v. Lillard,* 228 Or 202, 216, 364 P2d 776 (1961).

[5] *Garrett v. Eugene Medical Center,* 190 Or 117, 132, 224 P2d 563 (1950). *See also State v. Sullivan,* 230 Or 136, 142, 368 P2d 81 (1962).

[6] *See* 3A Wigmore on Evidence (Chadbourn rev 1970) 920-21, § 988, and 6 Wigmore on Evidence (Chadbourn rev 1976) 371-75, § 1808.

[7] We have also considered defendant's remaining two assignments of error, which were submitted on briefs and without oral arguments. We hold that the trial court did not err in either of those matters.