## Gladys FLIPPO v. MODE O'DAY FROCK SHOPS OF HOLLYWOOD et al

5-5112                                     449 S. W. 2d 692

Opinion delivered February 9, 1970

*Murphy, Arnold & Blair,* for appellant.

*Barber, Henry, Thurman, McCaskill & Amsler* and *Highsmith, Harkey & Walmsley,* for appellees.

CARLETON HARRIS Chief Justice. This litigation is occasioned by a spider bite. Gladys Flippo, appellant herein, went into a ladies clothing store in Batesville, operated by Rosie Goforth, and known as Mode O'Day Frock Shops of Hollywood. Mrs. Flippo tried on two pairs of pants, or slacks, which were shown to her by Mrs. Goforth. The first pair proved to be too small, and according to appellant's evidence, when Mrs. Flippo put on the second pair, she suddenly felt a burning sensation on her thigh; she immediately removed the pants, shook them, and a spider fell to the floor which

was then stepped upon. An examination of her thigh revealed a reddened area, which progressively grew worse. Mrs. Flippo was subsequently hospitalized for approximately 30 days. According to her physician, the injury was caused by the bite of a brown recluse spider.[1] Suit for damages was instituted against Mode O'Day Frock Shops and Rosie Goforth, the complaint asserting three grounds for recovery, first that a pair of slacks in a defective condition (by reason of the presence of a poisonous spider), and unreasonably dangerous was sold to appellant; second, that both appellees were guilty of several acts of negligence, and third, that there was an implied warranty that the slacks were fit for the purpose for which they were purchased, though actually not fit, because of the poisonous spider concealed therein. On trial, the court refused requested instructions offered by appellant on theories of implied warranty, and strict tort liability, and instructed the jury only on the issue of appellees' alleged negligence as the proximate cause of the injury. The jury returned a verdict for both appellees, and judgment was entered accordingly. From the judgment so entered, appellant brings this appeal, not however, appealing from the finding of no negligence; instead, the appeal is based entirely upon the court's refusal to submit the case upon implied warranty and strict tort liability theories. Accordingly, for reversal, it is first urged that "there was sufficient evidence to justify a finding that Mrs. Flippo was injured by goods unfit for their intended use, supplied by a merchant with respect to goods of that kind, and therefore the trial court erred in refusing to instruct upon the law of implied warranty of merchantability."

It might be said at the outset that appellant has filed a very thorough and comprehensive brief in support of the positions taken; however, we are unable to agree with the views presented under the circumstances

[1] In "Changing Times, the Kiplinger Magazine," issue of April, 1969, Page 45, there is an interesting article with reference to this spider, entitled "Beware the Brown Recluse." The views of several Arkansas physicians are set out, this state being one with a large infestation of this particular species of spider.

of this case. As pointed out by appellant, there was ample evidence to support a finding that Mrs. Flippo suffered a bite by a brown recluse spider concealed on the slacks furnished her by Mrs. Goforth (it is not conceded by appellees that the bite occurred in this manner). Appellant says:

"* * * If that be true, then appellant submits that such an article of clothing is not reasonably fit for use as an article of clothing and is thus not merchantable."

It is contended that appellees were bound by the implied warranty of merchantability imposed by Ark. Stat. Ann. §. 85-2-314 (Add. 1961), this statute providing that, in order to be merchantable, the goods must, *inter alia*, be fit for the ordinary purposes for which such goods are used. Appellant argues that an article of clothing which conceals a venomous creature is certainly unfit for use, and therefore at the time the slacks were handed to Mrs. Flippo, the garment was unfit for the use for which it was intended, and there was accordingly a breach of the implied warranty of merchantability under either the statute or common law.

We cannot agree that the law of implied warranty of merchantability is applicable to a case of this nature. The pair of pants itself was fit for the ordinary purposes for which stretch pants are used; there was nothing wrong from a manufacturing standpoint. In fact, the evidence reflects that Mrs. Flippo bought this particular pair after being bitten, and she has worn and laundered them since the accident. There is absolutely no evidence that the *goods* were defective in any manner. It is, of course, readily apparent that the spider was not a part of the product, and there is no evidence that either the manufacturer or retailer had any control of the spider, or caused it to be in the pants.[2] Mrs.

---

[2]Mrs. Goforth testified that the Mode O'Day company had six or eight factories, and that she received the clothing on consignment, the goods belonging to the company until sold. She said that the company products have an identifying tag sewn in; that occasionally, the parent company purchases items from other companies. The witness stated that the pants tried on by Mrs. Flippo did not have a Mode O'Day tag, and were manufactured by some other company.

Goforth said she receives the shipments once a week in pasteboard cartons sealed with tape, and that upon receiving the cartons, she immediately opens them, places the garments on plastic hangers, and hangs them out. The cartons are delivered by truck line, and the witness stated that the slacks in question had been in the store for some time in excess of 20 days.

Irrespective of whether the spider attached itself to the garment in Kansas City, or in Batesville,[3] *it was not a part of the garment.* The three cases cited by appellant as authority for the common law implied warranty of merchantability, all deal with a defective product,[4] which is not the situation in the present litigation. Perhaps our position can best be made clear by simply stating that the spider was not a part of the manufactured article, and the injury to Mrs. Flippo was *caused by the spider—and not the product.* We find no cause of action under either the statute or the common law.

Nor can we agree that the trial court erred in refusing to instruct the jury upon the principles of strict tort liability. In Restatement (Second), Torts § (402A) which deals with products that are defective, and thus made unreasonably dangerous to the user or consumer, we find:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

---

[3]The evidence reflected that Mrs. Flippo had, at some previous time, been in the business of raising chickens, and owned a chicken house. She said that she had seen spiders in this chicken house, though not at the time chickens were being raised. It is suggested by appellees that she could have brought the spider into the store with her.

[4]One of the cases, *Neel* v. *West-Winfree Tobacco Company*, 142 Ark. 505, 219 S. W. 326, deals with tobacco that was practically worthless and entirely unsatisfactory for use or sale because it was full of bugs; of course, like weevils in flour, this ruined the product.

(a)   the seller is engaged in the business of selling such a product, and

(b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. * * *"

It is at once obvious that the *product* sold in the instant case was a pair of slacks, and the slacks were not in a defective condition; nor were they unreasonably dangerous; in fact, they were not dangerous at all; still further, the *slacks* did not cause any physical harm to Mrs. Flippo. Without elaboration, it is at once apparent that sub-headings (a) and (b) are not applicable to this litigation, for no one can really contend that the spider was a part of the product, nor can anyone do more than guess at when the spider attached itself to the slacks.

Appellant points out that the lack of privity between a plaintiff and defendant is no longer a defense in any action brought against a manufacturer or seller of goods to recover damages for breach of warranty, or for negligence "if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods." See Ark. Stat. Ann. § 85-2-318.1.[5]

She asserts that it is now entirely logical for this court to adopt the rule of strict tort liability.

In cases involving the sale and use of alleged defective products, we have pointed out that there must be substantial evidence of negligence, such negligence being a proximate cause of the injuries sustained before recovery will be permitted. See, *inter alia, Kapp* v. *Sullivan Chevrolet Company,* 234 Ark. 395, 353 S. W. 2d 5; *Ford Motor Company* v. *Fish,* 232 Ark. 270, 335 S. W. 2d 713. In one case, *Chapman Chemical Company* v.

---

[5]This court had already held that the doctrine of privity should not be a shield against a breach of warranty action when the suit was instituted by an employee of the original purchaser. See *Delta Oxygen Company* v. *Scott,* 238 Ark. 534, 383 S. W. 2d 885 (1964).

*Taylor, et al,* 215 Ark. 630, 222 S. W. 2d 820, we applied the rule of strict liability to the use of the substance, 2-4-D, stating:

"If one casts into the air a substance which he knows may do damage to others, and in some circumstances will certainly do so, principles of elementary justice, as well as the best public policy require that he know how far the substance will carry or be conveyed through and what damage it will do in the path of its journey, and if he releases such a substance whether from ignorance of, or in indifference to the damage that may be done, the rule of strict liability should be applied."

Were we inclined to a more liberal view of the theory of strict tort liability, it would not be applied in this case, for we have no hesitancy in stating that the facts in the instant litigation do not support the submission of the case on that theory. This case was properly submitted upon the issue of negligence, and it would have been improper for the court to have given the instructions sought by appellant.

Affirmed.