Argued September 5, affirmed November 21, 1974

HOOVER, *Appellant, v.* MONTGOMERY WARD & CO., INCORPORATED ET AL, *Respondents.*

528 P2d 76

*Chester Scott,* Independence, argued the cause and filed briefs for appellant.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents. With him on the brief were Wayne A. Williamson and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL, BRYSON, and SLOPER, Justices.

HOWELL, J.

This is a negligence and strict liability action in which the plaintiff seeks to recover from the retailer and installer of a tire for injuries suffered in an automobile accident. The trial court refused to submit the issue of strict liability to the jury, and the jury returned a verdict for the defendants on the issue of negligence. The plaintiff appeals.

In July 1971 plaintiff's husband purchased four tires from defendant Montgomery Ward & Co., Incorporated. Two of these tires were mounted on the rear wheels, with the mounting included in the price of the tires. On November 16, 1971, the left rear tire split and plaintiff's husband replaced it with the spare. The next day plaintiff's husband returned the tire to Montgomery Ward and an adjustment was made on the price of a new tire. Defendants Bell and Mayenschien, employees of Montgomery Ward, placed the tire on the spare wheel and mounted the wheel on the car. On December 5 plaintiff was involved in a one-car accident which gave rise to this case.

It is not necessary to discuss the details surrounding the accident. The defendants' contention throughout the trial was that the accident was caused by plaintiff's failure to keep her car under control while passing another vehicle.

Regarding the issue of negligence, the plaintiff alleged the defendants failed to tighten the lug nuts to the lug bolts on the wheel and failed to inspect the

wheel to ascertain if it was properly attached. Suffice it to say that we have carefully reviewed the evidence in the case and it amply supports the jury's finding against the plaintiff on the issue of negligence.

Plaintiff assigns as error the trial court's refusal to submit to the jury the question of strict liability. In her complaint plaintiff alleged:

"III

"The automobile was unreasonably dangerous for its intended use when delivered by Montgomery Ward & Co., Incorporated, through its agents and employees, to the plaintiff's husband, Melford S. Hoover, by reason of a defective and improper installation of the left rear tire and wheel of [sic: on] the left rear hub and axle of the Plaintiff's automobile."

Plaintiff does not contend that the tire sold to her husband was defective, nor does she contend that the tire was improperly installed on the wheel. Rather, plaintiff argues that the "product" which Montgomery Ward sold to her husband was not merely the tire but also the installation of that tire on the automobile. Thus, plaintiff contends that the defendants should be held strictly liable in tort for the negligent installation of the wheel onto the axle.

■ In adopting § 402A of the Restatement of Torts (Second), this court said:

"* * * It is not necessary to prove that the product is 'ultrahazardous,' nor that it was placed on the market 'negligently.' It is necessary, however, to prove that it is dangerously defective." *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967).

This case presents the question of whether the definition of "dangerously defective product" should be expanded to include within the scope of strict liability the negligent installation of a nondefective product. We have found no court which has stretched the doctrine of strict liability in tort to this extreme, and we decline to do so.

Plaintiff has directed the court's attention to a series of cases from other jurisdictions holding that, in a commercial transaction, the supplier of a product could be held liable under a theory of either strict liability in tort or breach of warranty, although the transaction did not fall within the traditional "sale" concept. However, these sale-service hybrid cases are inapposite to the case at hand.

In *Newmark v. Gimbel's Incorporated,* 54 NJ 585, 258 A2d 697 (1969), the New Jersey Supreme Court held a beauty shop strictly liable under an implied warranty of fitness when defective permanent wave lotion was applied to a patron's hair. The court reasoned that if the lotion had been sold over the counter there would have been strict liability. There was no logical reason to hold otherwise merely because the defective lotion was applied in a service context, especially when the cost of the service included the price of the lotion.

In *Newmark,* as in all sale-service hybrid cases, it is clear that the product, as opposed to the service, was defective. *See e.g., Friend v. Childs Dining Hall Co.,* 231 Mass 65, 120 NE 407 (1918) (restaurant supplied tainted food); *State Stove Manufacturing Company v. Hodges,* 189 So 2d 113 (Miss 1966), *cert. denied* 386 US 912, 87 S Ct 860, 17 L Ed 2d 784 (1967) (con-

tractor supplied defective hot water heater); *Worrell v. Barnes,* 87 Nev 204, 484 P2d 573 (1971) (redecorator of house supplied defective gas pipe fittings); and *Carpenter v. Best's Apparel, Inc.,* 4 Wash App 439, 481 P2d 924 (1971) (beauty shop supplied defective permanent wave lotion). In the case at hand, as stated above, there was no allegation that the tire was defective.

As one author notes:

"When the contract between plaintiff and defendant is commercial in character, the courts are willing to extend liability without fault to the hybrid sale-service transaction, *provided that a defective product is supplied to the plaintiff* or used by the defendant in the course of performing the service. * * *" (Emphasis added; footnote omitted.) Note, *Products and the Professional: Strict Liability in the Sale-Service Hybrid Transaction,* 24 Hastings J 111, 116 (1972).

*See also,* Phipps, *When Does a "Service" Become a "Sale"?,* 39 Ins Counsel J 274 (1972).

In cases other than the sale-service hybrid transaction courts have also been reluctant to extend the definition of "product" beyond the article actually manufactured or supplied. *See Flippo v. Mode O'Day Frock Shops of Hollywood,* 248 Ark 1, 449 SW2d 692 (1970).

■ In the instant case it is obvious that the product sold to plaintiff was not dangerously defective. Even if we accepted plaintiff's version of the cause of the accident, it was not a dangerously defective tire which caused plaintiff's injuries, but rather the installation of the wheel on the hub and axle of the auto. In such case it might be said that plaintiff's auto became dan-

gerously defective, but certainly not the tire. Plaintiff herself must have recognized this feature, because in her complaint she does not allege that the tire was an unreasonably dangerous product but that "the automobile was unreasonably dangerous for its intended use * * *."

It is clear that this was not a proper case for strict liability in tort and the trial court correctly refused to submit that issue to the jury.

We have carefully considered the plaintiff's other assignments of error and find that they are either without merit or were not properly preserved at trial. The jury obviously relied on defendants' disinterested witnesses and believed that the cause of the accident was plaintiff's manner of driving rather than negligence in the installation of the wheel on the hub and axle.

Affirmed.