Robert E. **CONGER**, Plaintiff and Appellant,

v.

**TEL TECH, INC.**, Defendant and Appellee.

No. 890231–CA.

Court of Appeals of Utah.

Sept. 12, 1990.

Colin P. King (argued), Giauque, Williams, Wilcox and Bendinger, Salt Lake City, for plaintiff and appellant.

Raymond M. Berry (argued), Richard A. Van Wagoner, Snow, Christensen & Martineau, Salt Lake City, for defendant and appellee.

Before BULLOCK,[1] GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Plaintiff Robert E. Conger appeals from an adverse jury verdict on negligence, and the trial court's directed verdict striking down his strict product liability claim against defendant Tel Tech. We affirm.

[1.] J. Robert Bullock, Senior Judge, sitting by special appointment pursuant to Utah Code

## FACTS

In March 1979, Conger's employer, Meadow Gold, purchased a milk tanker from Western General Dairies. The tanker had two elliptical stainless steel tanks used for transporting milk. A ladder led to the top of each tank. It was Conger's responsibility to collect raw milk with the tanker from several dairy farms and take it to Meadow Gold's processing plant in Salt Lake City. After the milk was pumped out of the tanks, he would clean the inside of each tank. He did this by climbing down into the tanks through an access hatch on each tank and scrubbing the inside with a special brush and detergents.

In May 1979, Meadow Gold entered into an oral agreement with Tel Tech, wherein Tel Tech was to sell and install a cleaning mechanism in the milk tanker. The mechanism consisted of two spray balls, one for each tank, welded to the top of each tank. By attaching a hose to the spray balls, cleaning and rinsing solutions could then be pumped into the tanks without the necessity of anyone climbing inside. The spray balls were placed on top of each tank opposite the ladders, requiring the operator to walk across the top of the tanker from the ladders to the spray balls to attach the hoses. Tel Tech did not install any type of walk protection across the top of the tanker and did not advise Meadow Gold to do so, nor did Meadow Gold inquire about safety measures.

On January 1, 1981, Conger stepped over the tanker's hatch to attach a hose to the spray ball, slipped on a spot of grease or milk fat, and fell from the tanker, suffering serious injuries. He had used the spray balls regularly for over a year without mishap, between three and four hundred times. He had also complained to Meadow Gold management that using the spray balls was unsafe because of the fall hazard.

Conger filed a complaint, naming Tel Tech and others as defendants. The claims against all other defendants were settled.

Ann. § 78–3–24(10) (Supp.1990).

The claim against Tel Tech proceeded to trial. Conger presented evidence on theories of negligence and strict product liability. There was a dispute as to whether Conger should be allowed to present a strict liability theory because the pleadings contained only a negligence claim. However, the trial judge gave Conger leave to amend the pleadings and concluded that Tel Tech, through the course of discovery, had sufficient notice of Conger's strict liability theory to justify amending the pleadings.

After all the evidence was presented, the court granted Tel Tech's motion for a directed verdict against Conger's strict liability claim, so only submitted the negligence claim to the jury. The court instructed the jury to disregard evidence relating to Conger's strict product liability theory. In response to specific interrogatories, the jury concluded that neither Tel Tech nor Conger was negligent.

Conger appeals, primarily on the grounds that (1) the court improperly dismissed his product liability claim; and (2) the court's jury instructions were vague and confusing, thus creating the necessity for a new trial on the negligence theory as well.

### DIRECTED VERDICT

In reviewing the directed verdict, we consider the evidence in the light most favorable to Conger. *See Gagon v. State Farm Mut. Auto. Ins. Co.*, 746 P.2d 1194, 1196 (Utah Ct.App.1987), *cert. denied*, 771 P.2d 325 (Utah 1988). "A directed verdict is only appropriate when the court is able to conclude, as a matter of law, that reasonable minds would not differ on the facts to be determined from the evidence presented." *Management Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.*, 652 P.2d 896, 897–98 (Utah 1982).

Conger presented evidence, largely in the form of expert testimony, to support his theory of strict liability. His expert testified that the installation of spray balls by Tel Tech without providing walk protection

for safe access to them created a fall hazard and, as a result, created a defective and unreasonably dangerous product. He testified further that spray balls should never be installed without some sort of walk protection.

The evidence suggests at least two key issues. First, under a strict liability analysis, whether the spray balls sold and installed by Tel Tech constituted a defective product because of the absence of walk protection and, second, whether the spray balls were unreasonably dangerous because of the lack of safe access. Tel Tech claimed, and the trial judge agreed, that the evidence presented by Conger was insufficient as a matter of law to justify a claim in strict liability.

### STRICT PRODUCT LIABILITY

■ In *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152 (Utah 1979), the Utah Supreme Court adopted the strict product liability doctrine of Section 402A of the Restatement (Second) of Torts. *Id.* at 158. In order for the theory of strict liability to apply, Section 402A requires that there be a sale of a product which creates an unreasonably dangerous situation for the user. *Id.* at 156. After hearing the evidence, the trial court found, as a matter of law, that Section 402A did not apply. The evidence was undisputed that the spray balls themselves were not defective, nor was the actual installation of the balls defective.

■ Conger, however, argues that with the installation of the spray balls, Tel Tech created a complete cleaning system and that the failure to install safety grit strips as part of that system created an unreasonably dangerous condition. Tel Tech counters that (a) the installation of the spray balls was a service; (b) if the installation of safety devices was required, it was part of the installation service; and (c) because it was a service, strict liability does not apply.[2]

Tel Tech relies upon *Hoover v. Montgomery Ward & Co.*, 270 Or. 498, 528 P.2d

---

2. We note that in addition to installing the spray    balls, Tel Tech also sold them to Meadow Gold.

76 (1974) to support its argument. *Hoover* was, as here, a negligence and strict liability action wherein Hoover sought to recover from the seller and installer of an automobile tire damages for injuries suffered in a subsequent accident. The trial court refused to submit the issue of strict liability to the jury. The jury subsequently returned a verdict in favor of the defendant on the negligence issue. On appeal to the Oregon Supreme Court, the plaintiff, Hoover, alleged that the defendant, after mounting the tire on the wheel, failed to tighten the lug nuts when installing the wheel on the hub and axle. Thus, Hoover argued, the car became unreasonably dangerous for its intended use even though the tire, itself, was not defective nor improperly mounted on the wheel because the product the defendant sold included not only the tire but also the installation of the tire on the automobile. The Oregon Supreme Court stated that "[t]his case presents the question of whether the definition of 'dangerously defective product' should be expanded to include within the scope of strict liability the negligent installation of a nondefective product. We have found no court which has stretched the doctrine of strict liability in tort to this extreme." *Hoover*, 528 P.2d at 77.[3] The court thus declined to adopt Hoover's theory, finding that it "was not a dangerously defective tire which caused plaintiff's injuries but, rather, the installation of the wheel on the hub and axle of the auto. In such case it might be said that plaintiff's auto became danger-

ously defective, but certainly not the tire." *Id.* at 78.

In the present case, the trial court found *Hoover* to be persuasive. We agree. Tel Tech's alleged negligence in failing to install grit strips while installing the spray balls is similar to the defendant's failure to safely tighten the lug nuts on the wheel when installing it on the car in *Hoover*. Because Tel Tech failed to install grit strips, the tanker may have become dangerously defective, but the product which Tel Tech sold and installed, the spray balls, did not become dangerously defective.[4]

Conger argues that Tel Tech designed a total cleaning system and the situation, therefore, falls in the same category as cases in which there was a defective design in the original manufacturing process. *See, e.g., Brown v. N. Am. Mfg. Co.*, 176 Mont. 98, 576 P.2d 711 (1978) (strict liability was found, based upon evidence of a design defect in a self-unloading feed wagon which did not have steps or other access for safely climbing on the equipment); *Jones v. Pak–Mor Mfg. Co.*, 145 Ariz. 132, 700 P.2d 830 (Ct.App.1984), *cert. denied*, 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (the inadequacy of space on a garbage truck running board resulting in insufficient room available for a worker to perform his usual duties constituted a defective design and an unreasonably dangerous condition); *Lundy v. Whiting Corp.*, 93 Ill.App.3d 244, 48 Ill.Dec. 752, 417 N.E.2d 154 (1981) (lack of safe maintenance access to an overhead crane is a defect for strict

---

**3.** The Oregon Court of Appeals reaffirmed this reasoning in *Davis v. Pacific Diesel Power Co.*, 41 Or.App. 597, 598 P.2d 1228 (1979). However, other jurisdictions have approached the issue differently. *Cf., Bailey v. Montgomery Ward & Co.*, 690 P.2d 1280 (Colo.Ct.App.1984) (when the defendant failed to warn or instruct about the danger of installing a used innertube in a nondefective new tire, the failure to warn through adequate directions or instructions could itself constitute a product defect).

**4.** From the evidence, we seriously question whether the condition of the tanker was unreasonably dangerous. Utah Code Ann. § 78–15–6(2) (1987) defines "unreasonably dangerous" as a product which is "dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or

user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer." Conger had used the cleaning system hundreds of times for over a year. The fact that there had been no mishaps during this time would seem to indicate that the cleaning system was not unreasonably dangerous. In addition, it appears that Conger was fully aware of the defect and of the potential danger, even to the point of complaining to his employer, Meadow Gold, about the safety factor. Thus, he assumed the risk by his continued use of the equipment. Assumption of risk is one of two defenses to strict product liability enumerated in *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d at 158.

liability purposes); *Caterpillar Tractor Co. v. Gonzales*, 599 S.W.2d 633 (Tex.Ct. Civ.App.1980) (jury could find a design defect resulting from plaintiff's claim that the step on a Caterpillar tractor from which he fell was defectively designed).

We do not agree. We find that the present circumstance relates to the installation of a nondefective product and conforms to the reasoning of *DeLoach v. Whitney*, 275 S.C. 543, 273 S.E.2d 768 (1981), in which the sole issue was whether Whitney was strictly liable for failing to install a new valve stem, or at least for not warning DeLoach of the deteriorated condition of his old valve stem, when he installed a tire. The *DeLoach* court declined to expand strict liability to include the negligent installation of a nondefective product, the tire. *See also Jamison v. Spencer R.V. Center, Inc.*, 98 Or.App. 529, 779 P.2d 1091 (1989). We, likewise, refuse to extend strict product liability in tort to this set of facts. We conclude that the trial court was correct in taking the issue of strict product liability away from the jury because the material element of a defective product was not present. *See Intermountain Farmers Ass'n v. Fitzgerald*, 574 P.2d 1162, 1165 (Utah 1978), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168.

### JURY INSTRUCTIONS

After granting a directed verdict on the strict product liability issue, the trial judge gave the following instruction:

> Before I instruct you, I need to apprise you of one legal matter that has been taken care of. Originally, the plaintiff was making a claim against the defendant on two different legal theories; one was a fault theory and one was—what's called a product liability theory, which is a theory of law upon which people can recover from defective products that cause injuries regardless of fault.
>
> I dismissed the second claim for legal reasons which the Court doesn't need to concern you with. And you will be asked to determine this case based on the negligence or fault theory. But some of the evidence that came into trial related sole-

ly to the product theory, evidence that the product that was sold was defective and unreasonably safe. (sic.)

> You'll hear some of the discussions between the lawyers, whether that evidence should be admitted, because that legal theory is no longer part of the case. That evidence is not relevant and will be stricken from the record, and you should treat it as if you've never known it.
>
> Is that sufficient explanation?
>
> Mr. Berry: I believe so, your Honor.
>
> The Court: All right, thank you.

█ First, we note that Conger's counsel did not object to the court's instruction to ignore the evidence pertaining to strict liability. Because he failed to raise this issue at trial, he waived the right to have it considered on appeal. *Heiner v. S.J. Groves & Sons Co.*, 790 P.2d 107, 115 (Utah Ct.App.1990).

█ Second, any possible confusion in the minds of the jury arising from the court's admonition was harmless error which was cured by the actual instructions given on the negligence cause of action. *State v. Ortiz*, 782 P.2d 959, 962 (Utah Ct.App.1989) (an appropriate jury instruction made harmless any adverse implication in the prosecutor's closing argument); *see also Hardy v. Hardy*, 776 P.2d 917, 925 (Utah Ct.App.1989) (error is harmless unless there is a reasonable likelihood that the error affected the outcome of the proceedings).

We affirm the judgment of the trial court.

BULLOCK and JACKSON, JJ., concur.