Argued October 14, affirmed October 30, 1959
## DAVIS *v.* ANGELL ET AL
345 P. 2d 405

*Robert R. Carney,* Portland, argued the cause for appellants. On the briefs were Jack, Goodwin & Santos, Oregon City, and Maguire, Shields, Morrison & Bailey, Portland.

*Lynne W. McNutt,* Coos Bay, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Sloan, O'Connell and King, Justices.

KING, J. (Pro Tempore)

Plaintiffs were awarded a judgment of $20,000 against the defendants for the death of Leonard Davis, under the Employers' Liability Act. ORS 654.305-654.335.

One of the principal questions in the case is: Was Leonard Davis an employe at the time of the fatal accident?

The defendant David C. Meyer, doing business as Oswego Lumber Company, owned a sawmill and some

timberlands along the Foothills road in Oswego, Oregon.

The defendants Alvin R. Hoover, Walter Cookman and Edward F. Angell were a partnership, doing business as H.C.A. Lumber Company, and were operating the sawmill under contract from David C. Meyer, owner of the Oswego Lumber Company.

The H.C.A. Lumber Company had constructed a log dump near the mill, but the dump was usually operated by David C. Meyer's employe, a Mr. Hosey. On the day of the accident in question, February 10, 1956, Mr. Hosey was off duty as operator of the dump for the purpose of getting married, and his place was taken by Edward Angell, one of the partners of H.C.A. Lumber Company.

The decedent, Leonard Davis, with his own truck was trucking logs to the dump for Glen Schantz, doing business as Schantz Logging Company, who was the logging contractor for Mr. Meyer of the Oswego Lumber Company.

Mr. Meyer made the arrangements for the services of Leonard Davis and his truck and sent him out to truck logs from the Schantz operations to the mill. The decedent, Leonard Davis, was paid by Mr. Meyer for logs trucked by the thousand feet, but those payments were charged against the account of the Schantz Logging Company, by arrangements between Schantz and Meyer.

The log dump is constructed by placing a brow log between the mill pond and the truck road. Wire cables called "unloading straps" are securely fastened to the brow log, spaced some eight feet apart, where they are attached to the brow log. The A-frame and power equipment for unloading are directly across the road from the brow log.

As the truckload of logs is driven up it is stopped and is spotted so that the center of the load is as nearly as possible in line with the block and line on the head of the A-frame and the point midway between where the two cables are fastened to the brow log.

The "unloading straps" are then either pushed through by hand or pulled through with a hook, under the logs and above the truck reach or frame and the eyes of both straps are connected together at the hook on the block and line from the A-frame. When the unloading machine is started it raises the apex of the triangle formed by the unloading straps and thus caused the logs to roll down the incline formed by the straps and to roll over the brow log and into the pond.

On February 10, 1956, about 5 o'clock p.m., just as it was starting to get dark, Mr. Davis drove his loaded truck onto the landing to be unloaded. The load consisted of 15 or 20 logs, 16 feet in length, from the Schantz logging operation about one-half mile from the dumping place.

The defendant Angell came up to the truck on the A-frame side, which was also the driver's side, as the truck was then facing.

The truck in this case was called a stake truck, having stakes up at the end of the bunks for the purpose of holding the logs in place. Some of the logs were piled above the tops of the stakes. Such top logs are supposed to be "saddled," that is, the top log resting in the saddle between two lower logs.

On this particular load there was a binder chain around the load of logs, near the center of their lengths, and the ends of this chain were tightly drawn together by a binder (Plaintiffs' ex. 3) which was in place on the A-frame side of the load.

Mr. Angell released the binder and removed it from the chain and about the same time the decedent, Mr. Davis, was stepping from the cab of his truck. He apparently was standing very close to Mr. Angell when the latter hanged the binder in its accustomed place on the back of the cab.

The decedent then went around the truck and onto the brow log between the truck and the pond, apparently for the purpose of getting the unloading straps and shoving them through under the load to Mr. Angell for hooking up to the A-frame line. One strap was actually pulled through and Mr. Angell was reaching for the other strap when the upper logs began to roll off the truck and struck the decedent, Mr. Davis, who apparently was still on the brow log and in the path of the rolling logs. Mr. Davis was killed in the accident.

A special verdict was submitted to the jury, containing the question as follows: "Was Leonard Davis, at the time of the occurrence resulting in his death, an employe of Glen Schantz whose lawful duty required him to be or to work about the log dump of Oswego Lumber Co.?" The jury answered the question "Yes." As mentioned before, they also returned a general verdict for the plaintiffs in the sum of $20,000.

Defendants' assignment of error No. 1 states: "The court erred in denying the motion for nonsuit:"

"MR. JACK: At this time the plaintiff having rested, on behalf of the defendants and each of them the defendants move the court for an order of involuntary nonsuit on the grounds and for the reasons: First, there is no evidence sufficient to submit this cause to the jury under the theory of the Employers' Liability Statute, and, secondly, if there is no evidence under the theory of the Em-

ployers' Liability Statute the complaint fails to state facts sufficient to submit the cause to the jury upon the issues. Now that is my opinion."

The motion was denied and an exception allowed.

The amended complaint, paragraph VIII, p 2, clearly alleges that Leonard Davis was an employe of Glen Schantz, doing business as the Schantz Logging Co., and was on the log dump in the course of his employment.

■ The testimony of Glen Schantz, the alleged employer, was enough itself to require the matter to be submitted to a jury on the question of employment and to require a denial of the motion for nonsuit. He testified that he had the right to hire and did hire Mr. Davis, through Mr. Meyer. He testified that he had the right to fire Mr. Davis, if he wished to exercise that right, and that Mr. Davis was not hired to truck all the logs. He also testified as to the method of loading the truck, the equipment necessary, and that Mr. Davis did not furnish either the loading equipment or the other employes. The same was true regarding the unloading of the truck. He told Mr. Davis what logs to take.

It is true that the decedent furnished his own truck and was paid by the thousand feet hauled, but the above-mentioned testimony of Mr. Schantz, along with the other testimony, showed a right to control sufficient to require that it be submitted to the jury and for denial of the motion for nonsuit.

Defendants in their brief, under the first assignment of error (A, Points and Authorities) raise the question of decedent's alleged violation of the Safety Code by stepping between the brow log and the load, and claim that plaintiff is thereby barred from recovery.

Such a claim was not mentioned or called to the court's attention in any way in the motion for nonsuit or in the exception to the court's ruling thereon.

■ But even if the exception is broad enough to include the question of whether or not the decedent violated the Safety Code, that matter is disposed of by Mr. Justice McAllister in *Hillman v. North Wasco Co. PUD,* 213 Or 264, 290, 323 P2d 664, where, speaking of the Safety Code, he says:

"* * * It could not be used by the employer as a basis for charging his employees with contributory negligence.

"Since the safety act was adopted for the protection of employees, the use of that act and safety codes promulgated thereunder as a standard with which to measure the conduct of an employee would defeat the obvious purpose of the act."

Mr. Justice Robert S. Bean is then quoted in *Hill v. Saugested,* 53 Or 178, 189, 98 P 524, as follows:

"* * * To hold otherwise would be, in effect, little short of a judicial repeal of the statute, and would place upon the servant the consequences of the unlawful act or omission of the master."

Defendants rely primarily on cases where the plaintiff was the foreman who is expressly charged with the duty of seeing that the requirements of the act are complied with and who have a right and duty to make and provide a safe place in which to work. They are considered as vice principals and have equal duties with principals. *Schmidt v. Multnomah Opr. Co.,* 155 Or 53, 61 P2d 95; *Robbins v. Irwin et al.,* 180 Or 667, 677, 178 P2d 935.

Defendants under their points and authorities and argument under assignment of error No. 1 have at-

tempted to extend the above rule to all employes, which cannot be done, as is shown in *Hillman v. North Wasco Co. PUD,* supra.

The motion for nonsuit was properly denied.

Defendants' assignment of error No. 2 is that the court erred in giving the following instruction:

"Now, I have said to you in referring to the allegations contained in the plaintiff's complaint that one of the things that the plaintiff must prove as a prerequisite to her being entitled to recover was that the deceased Leonard Davis was an employee of Glen Schantz at the time and place of the accident in question. I, therefore, instruct you that the test as to whether Leonard Davis was an employee, as a test you are to determine by finding who had the right to control the method of accomplishing the job of log hauling. If you find that Glen Schantz had the right to terminate Leonard Davis' job prior to completion, without incurring the breach of any restrictions, that is the most conclusive example that Schantz was the employer and Davis was his employee. There are other secondary tests. An employee may furnish some of the tools or equipment to accomplish his task. The employer of a person normally has the power to set the time for performing such work. An employee does not have to employ others or become an employer himself in order to accomplish his task, other than substitute for himself and an employee does not have the right to work for others without the permission of his employer or at the employer's direction. These factors are all determinants of the employer-employee relationship but they are secondary to the test of the right to control whether such control was actually exercised or not. As I have initially said the primary test is whether or not the person claimed to be the employer had the right to control the person alleged to be the employee."

The defendants took an exception to this instruction as follows:

"MR. JACK: The defendant furthermore excepts to the court giving either exactly or in substance plaintiff's requested instruction No. X. That is the yardstick for determining employer-employee relationship.

"THE COURT: Exception allowed."

The above instruction as given by the court is not the exact words of plaintiffs' request No. 10, but it is in substance the same.

We are first confronted with the question of whether or not defendant's exception was sufficient. Did it sufficiently point out to the court the error, if any, complained of? The defendants in their reply brief (p 25) claim that the exception is a general exception and, as such, operates to challenge the instruction on the ground that it is an erroneous statement of the law as applied to the facts. They cite a line of cases beginning with *Nickum v. Gaston,* 24 Or 380, 33 P 671.

■ While the Nickum case does hold that a general exception is sufficient when an instruction is challenged on the ground that it is not the law as applied to the facts of the case, it also holds at page 390:

"We agree with counsel for respondent that an exception to a charge of the court must point out distinctly the particular portion excepted to, and that a general exception to the entire charge, or a series of propositions, if any one of them is correct, is insufficient."

In the above case it is pointed out that the appellant did distinctly except to the particular portion of the charge, which was erroneous in its entirety.

Now applying those rules to this case, surely the

first part of the instruction in requiring the plaintiffs to prove the deceased an employee of Glen Schantz was correct. In fact the defendants requested such an instruction (Defendants' req. No. 5.).

The instruction in the last sentence said: "As I have initially said the primary test is whether or not the person claimed to be the employer had the right to control the person alleged to be the employee." That is generally held to be the primary test. *Harris v. State Ind. Acc. Comm.*, 191 Or 254, 230 P2d 175; *Butts v. State Ind. Acc. Comm.*, 193 Or 417, 427, 239 P2d 238; *Nordling v. Johnston*, 205 Or 315, 283 P2d 994, 287 P2d 420.

The instruction set out a number of secondary tests to be used in determining whether the decedent was an employe or an independent contractor. Some of them were not artfully worded, but the exception did not call the court's attention to any particular or general fault or error.

This court in *Whitehead v. Montgomery Ward & Co., Inc.*, 194 Or 106, 128, 239 P2d 226, said:

"It is the well-established rule in this state that an exception must be timely made and must bring to the attention of the trial court all of the grounds upon which it is based, before it may be considered by this court. Where the objection urged to the instruction was not presented to the trial court, it cannot be considered here for the first time. Suko v. Northwestern Ice Co., 166 Or 557, 573, 113 P2d 209; Bramwell v. Rowland, 123 Or 33, 49, 261 P 57."

This rule is followed in *Stose v. Heinrich and Horseny*, 199 Or 386, 390, 261 P2d 675, and in *Tuite v. Union Pacific Stages et al.*, 204 Or 565, 596, 284 P2d 333.

■ Defendants' exception to the above-mentioned instruction was not a proper exception and not sufficient to be considered by this court. While there is some poor wording in the instruction, it substantially covers the subject. Assignment of error No. 2 is rejected.

■ The third assignment of error relates to the ruling of the court in refusing to receive into evidence defendants' exhibit "A," a side view photograph of decedent's truck. The purpose of the offer as expressed by defendants' counsel was:

> "MR. JACK: Well, first it's the ownership of the truck. It shows the type and the model of the truck, and I think it is pertinent to the issues involved."

The identification of the exhibit was in Mr. Schantz's testimony as follows:

> "Q (By Mr. Jack) I will hand you what has been marked defendents' Exhibit A for identification, and I will ask you if it looks like a picture of the Davis truck?
> "A That is right."

There was no real issue in this case as to the ownership of the truck. Both parties and their witnesses spoke of it repeatedly as the decedent Davis' truck. The defendants introduced pictures of it (Defendants' ex. C and D in evidence). The amended complaint and other pleadings mentioned it as Leonard Davis' truck, so that in reality the ownership was admitted.

The type and model of the truck, in so far as they can be distinguished from the proffered exhibit "A," could have no bearing at all in the case, and, of course, could not be ascertained from the exhibit by a nonexpert. Here also the claim is made for the first time in defendants' brief, and not in the statement of the

purpose of the offer, that the lettering on the side of the truck in exhibit "A," including the P.U.C. permit number and a telephone number, indicated that Davis was holding himself out as a trucker generally available for hire. No explanation of the so-called P.U.C. figures and letters was offered, and the exhibit, even if properly identified and explained, would not prove any contention in the case.

There is a sign printed in large letters on the side of the truck door shown in the exhibit that might be prejudicial in the case; to-wit, "United Log Truckers Association, Inc."

There was no error in the rejection of defendants' exhibit "A."

The judgment is affirmed.